Patrick Connolly, Appellant, *v.* Hall and Grant Construction Company, Respondent.

1. Master and Servant — When Superintendent Alter Ego of Corporation. A corporation must act through individuals, and the authority to act for and represent a corporation is not necessarily confined to one person. Where the president of a construction company, engaged in erecting a large building, gave his orders to and through a superintendent, and the latter gave instructions to the foremen, having charge of the workmen, and to other employees, to do the work, how to do it and where to do it, a jury would be entitled to find that the superintendent, at least in the absence of the president, was the *alter ego* of the company.

2. Same — Negligence — Duty of Master to Communicate Knowledge of Hidden Danger to Servant. In an action by an employee to recover from his employer, a corporation, damages for personal injuries alleged to have been caused by its negligence, it appeared that the accident was caused by the plaintiff's sawing through a certain timber at a certain place in accordance with a direction from the defendant's superintendent, thereby causing a platform on which the plaintiff was working to fall. There was evidence from which the jury could have found that the superintendent was the *alter ego* of the defendant, in the absence of its president; that he knew of hidden facts, of which the plaintiff had no knowledge, tending to render it unsafe and dangerous to saw through the timber without providing for its support; that his attention was also twice called to the danger by a foreman under his direction, and that, although he then directed the placing of a support for the timber, he did not call plaintiff's attention to the danger or direct him to stop sawing until the support was placed, so that he could continue it in safety. *Held*, that a dismissal of the complaint was erroneous, since it is the duty

of an employer, who has knowledge of a hidden defect and danger affecting the safety of an employee, to communicate such knowledge to him. It should not, therefore, have been determined as a matter of law that the defendant was not responsible for the failure to inform the plaintiff of the hidden danger, the lack of knowledge of which led him to do an act which resulted in his injury.

*Connolly* v. *Hall & Grant Construction Co.*, 117 App. Div. 887, reversed.

(Argued April 20, 1908; decided May 19, 1908.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 25, 1907, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term, and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Moses Feltenstein* for appellant. The defendant was clearly guilty of negligence in failing to supply plaintiff with a reasonably safe place in which to work and in failing to warn plaintiff of the danger. (*Benzing* v. *Steinway & Sons*, 131 N. Y. 547; *Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 368; *Flike* v. *B. & A. R. R. Co.*, 53 N. Y. 549; *O'Brien* v. *B. F. Co.*, 183 N. Y. 319; *Vogel* v. *A. B. Co.*, 180 N. Y. 373; *Riola* v. *N. Y. C. & H. R. R. R. Co.*, 97 App. Div. 252; *Maltby* v. *Belden*, 45 App. Div. 384.) On the evidence in the case the superintendent was the *alter ego* of the defendant. (*O'Connor* v. *Hall*, 52 App. Div. 133; *Kimmer* v. *Weber*, 151 N. Y. 422; *Hogan* v. *Smith*, 125 N. Y. 774; *McCampbell* v. *Steamship Co.*, 104 N. Y. 552; *Hudson* v. *Steamship Co.*, 110 N. Y. 625; *Richard* v. *Hayes*, 17 App. Div. 422; *Watts* v. *Beard*, 18 App. Div. 243; *Yaw* v. *Whitmore*, 37 App. Div. 98; *Gibbons* v. *Illuminating Co.*, 36 App. Div. 140; *Hussey* v. *Coger*, 112 N. Y. 614.)

*John Vernou Bouvier, Jr., Dudley Davis* and *Frank V. Johnson* for appellant. The insertion of an upright under the end of the stringer at the point where it was sawed was a detail of the work of demolition of the bridge, and the failure

on the part of the defendant's servants to support the stringer in the progress of the work by the insertion of an upright thereunder, was the negligence of a fellow-servant, for which the master cannot be held responsible. (*Sheehan* v. *S. G. L. Co.*, 87 App. Div. 174; *Watts* v. *Beard*, 18 App. Div. 243; *Webber* v. *Piper*, 109 N. Y. 496; *Cullen* v. *Norton*, 126 N. Y. 1; *Ludlow* v. *G. B. & Mfg. Co.*, 11 App. Div. 452; *Kimmer* v. *Webber*, 151 N. Y. 417; *O'Connor* v. *Hall*, 52 App. Div. 423; *McCampbell* v. *C. S. Co.*, 144 N. Y. 552; *Hogan* v. *Smith*, 125 N. Y. 774; *Yaw* v. *Whitmore*, 37 App. Div. 93.)   Parish and Reynolds were the fellow-servants of the plaintiff. (*Cullen* v. *Norton*, 126 N. Y. 1; *Madigan* v. *O. S. N. Co.*, 178 N. Y. 242; *Vogel* v. *A. B. Co.*, 180 N. Y. 373; *Loughlin* v. *State*, 105 N. Y. 159; *Crispin* v. *Babbitt*, 81 N. Y. 516; *Hussey* v. *Coger*, 112 N. Y. 614; *Ingram* v. *Fosburgh*, 73 App. Div. 129; *Quigley* v. *Levering*, 167 N. Y. 58; *Ludlow* v. *G. B. & Mfg. Co.*, 11 App. Div. 452; *Warzawski* v. *McWilliams*, 64 App. Div. 63.)   No duty devolved upon the defendant to warn the plaintiff of the danger that arose in respect of the support of the bridge during the progress of its demolition. (*Perry* v. *Rogers*, 157 N. Y. 258; *Van Derhoff* v. *N. Y. C. & H. R. R. R. Co.*, 88 App. Div. 418; *Riola* v. *N. Y. C. & H. R. R. R. Co.*, 97 App. Div. 252; *Sheridan* v. *I. R. T. Co.*, 101 App. Div. 534; *Ryan* v. *T. A. R. R. Co.*, 92 App. Div. 306; *Wootton* v. *F. Gas Co.*, 102 App. Div. 294; *Schott* v. *Onondaga Bank*, 49 App. Div. 503; *Kelly* v. *B. I. P. Co.*, 122 App. Div. 185.)

CHASE, J.   This action is brought by an employee against an employer for damages alleged to have been caused by the employer's negligence. The defendant was engaged in making certain changes in a building in the city of New York, and as a protection to persons using the sidewalk adjoining said building and for the further purpose of holding materials to be used by it in said building a so-called bridge was erected over the sidewalk by first placing heavy

timbers one on the walk near the building and one in the street next to the curb. Upon these timbers were placed uprights about ten feet long and from five to seven feet apart. On top of the uprights running lengthwise of the street were placed timbers and upon such timbers were placed horizontally other timbers upon which were stretched heavy planking making the top to the bridge. The timbers that were placed on the uprights were not as long as the bridge but consisted of two or more pieces. The uprights were so placed as to make each joint where the timbers came end to end in the center of the top of one of such uprights. Planks were placed upon the outer side of the uprights so that the ends thereof extended to the top of the timbers which lay thereon and were spiked to such uprights and timbers. Planks were also spiked to said timbers on the inner side to cover such joints so that when the bridge was completed a person could not without special examination ascertain where the joints in the timbers upon the uprights were located.

After the bridge had been in place and used for several months the defendant desired to remove the northern end thereof. Stone and materials weighing 1,500 to 2,000 pounds then upon that part of the bridge to be removed were piled upon the bridge immediately south of the part so to be removed. One Reynolds was the foreman under the superintendent Parish in charge of the laborers in removing such part of the bridge. It became necessary in the removal of the bridge to cut the planking and also the timbers resting upon the uprights. The superintendent Parish directed the plaintiff to saw the plank and timbers at a place marked by him with a pencil and he expressly told the plaintiff to saw through the outer timber over the upright. The place Parish marked to have the planking and timbers sawed was five inches south of an upright and three feet nine inches north of one of the joints. The plaintiff did not know of the joint in the timbers over the uprights and could not discover such joint by any examination open to him. He obeyed his instructions and when he had sawed the planking through and the

outer timber in part, the great weight of the structure and of the stone and materials piled upon it caused the timber to break and as the joint in the timber was over the first upright to the south and there was nothing under the timber between such upright and the place where it was sawed to hold it up, it necessarily fell to the sidewalk with the planking and stone and materials supported by it, carrying the plaintiff with it. The plaintiff received the injuries for which this action is brought.

To one having knowledge of such joint in the timbers the work that the plaintiff did was manifestly dangerous and it was a negligent and reckless thing to cut the timber at the point where it was cut without first having an upright placed under it immediately south of the place where it was cut, to support it.  The plaintiff did not know of this hidden defect and danger.

The jury could have found from the evidence that Parish, the defendant's superintendent, two weeks prior to the time when the accident happened, at a time when the inner plank was removed to be replaced by a stronger one, had his attention called to this particular joint and that he then saw the joint, and the jury could have further found that he knew or ought to have known at the time he directed the plaintiff to saw the timber through that the place would, by the sawing, be made unsafe and dangerous.

It further appears that Reynolds, the foreman of the laborers, knew of the joint in the timbers but it is not apparent that he had authority to act in regard to supporting the timbers south of that part of the bridge to be taken down, and the jury could have found that he (Reynolds) twice called the attention of Parish to the danger of leaving the timber unsupported.  Parish afterwards directed that an upright be placed under such timber but did not call the plaintiff's attention to the danger or direct him to stop his sawing until the upright was so placed, and before the upright was obtained the accident occurred.

The statement in the prevailing opinion of the Appellate

Division that " There is nothing to show that the superintendent or the foreman had any other knowledge of the conditions that existed than had the plaintiff," is, in our opinion, directly contrary to the record or to what might have been found by the jury.

This court in *O'Brien* v. *Buffalo Furnace Company* (183 N. Y. 317) held that where a general master of a blast furnace, the *alter ego* of the owner thereof, knew that it was dangerous and improper to use a steel rod for tamping dynamite, observed the foreman using a steel rod to force a piece of dynamite down a pipe, but walked away without warning him against the use of such rod, it is erroneous to direct a verdict for the defendant upon the ground that the negligence of the general manager in permitting the foreman to use the steel rod was negligence in the performance of a duty by an employee in respect to a detail of the work for which the defendant is not responsible.

Assuming that supporting the timber was a detail of the work, and Reynolds, the foreman of the laborers, with knowledge of such joint in the timbers, had negligently and recklessly directed and allowed the plaintiff to cut the timber in two without providing such support, and Parish, as the representative of the defendant, with knowledge of such joint in the timbers and of Reynolds' negligence and recklessness, had failed to assert his authority to stop such reckless act, we would have a case in all respects like that of *O'Brien* v. *Buffalo Furnace Company* (*supra*).

It is the duty of an employer, who has knowledge of a hidden defect and danger affecting the safety of an employee, to communicate such knowledge to him. An employee can then refuse to proceed until the defect is cured or the danger removed, or he can proceed with the work assuming the risk.

It does not make any difference in the result, and we do not see that it is any different in principle where, instead of Reynolds' negligence and recklessness, with the knowledge and acquiescence of Parish, the vice-principal, the vice-principal himself negligently and recklessly fails to fulfill the duty

devolving upon him of making known to the employee the hidden danger of which the jury may have found that he, Parish, was fully aware. Parish directed the plaintiff to do a piece of work, the doing of which necessarily made the place in which he was directed to work not only unsafe and dangerous, but the doing of such work as instructed necessarily resulted in his injury.

We have so far assumed that Parish was the *alter ego* of the defendant, and our reasoning is dependent upon this assumption. A corporation must act through individuals. The authority to act for and represent a corporation is not necessarily confined to one person. It appears from the record that the president of the defendant was present at the work every day or nearly every day. The defendant had a large number of foremen, like Reynolds, who was a foreman of laborers. Parish was the defendant's superintendent or general foreman having charge of all the foremen of the various work. The orders of the president of the defendant were given through Parish, and Parish gave instructions to the other employees to do the work, and how to do it and where to do it, and the jury could have found from the record as it now stands that Parish at least, in the absence of the president, was the *alter ego* of the defendant.

It should not, therefore, have been determined as a matter of law that the defendant was not responsible for the failure to inform the plaintiff of the hidden danger, the lack of knowledge of which led him to do an act which resulted in his injury.

The judgment should be reversed and a new trial granted with costs to abide the event.

CULLEN, Ch. J., GRAY, VANN, WERNER, WILLARD BARTLETT and HISCOCK, JJ., concur.

Judgment reversed, etc.